No. 26-1886

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

TIM WALZ, the Governor of Minnesota in his official capacity, *et al.*,
Defendants-Appellees.

On Appeal from the United States District Court
for the District of Minnesota

**OPENING BRIEF FOR APPELLANT**

BRETT A. SHUMATE
   *Assistant Attorney General*

ERIC D. McARTHUR
   *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY
ANDREW M. BERNIE
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7539*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-3511*
   *andrew.bernie@usdoj.gov*

## SUMMARY OF THE CASE AND
## STATEMENT REGARDING ORAL ARGUMENT

Minnesota provides in-state college tuition and other post-secondary education benefits to aliens who are not lawfully present in the United States, provided that these individuals attend for three years and graduate from a Minnesota high school and meet other minimal requirements. The United States sued Minnesota, contending that this scheme is preempted by a federal statute which states that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). The district court dismissed the complaint, holding that giving benefits to unlawful aliens who attend and graduate from a Minnesota high school is not providing such benefits "on the basis of residence within" Minnesota, and that § 1623(a) does not preempt state statutes providing postsecondary education benefits to all unlawful aliens on the basis of residence so long as a single citizen of the United States anywhere in the country who is not a Minnesota resident is eligible.

This appeal presents significant questions of law, particularly since the district court's analysis, if accepted, would render an important federal statute almost entirely without effect. The United States thus suggests that oral argument should be heard, and that the Court should allot 20 minutes per side for argument.

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND STATEMENT REGARDING ORAL ARGUMENT

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION ....................................................................................................... 1

STATEMENT OF JURISDICTION........................................................................... 3

STATEMENT OF THE ISSUE................................................................................... 3

STATEMENT OF THE CASE .................................................................................... 4

    A.    Statutory Background..............................................................................4

    B.    Factual Background..................................................................................7

SUMMARY OF ARGUMENT ................................................................................... 9

STANDARD OF REVIEW ....................................................................................... 13

ARGUMENT ............................................................................................................. 13

SECTION 1623(A) EXPRESSLY PREEMPTS THE CHALLENGED MINNESOTA PROVISIONS ....................................................................... 13

    A.    Section 1623(a) preempts Minnesota's effort to provide in-state tuition to unlawfully present aliens. ...................................................14

    B.    The challenged provisions provide benefits "on the basis of residence" within Minnesota...............................................................16

    C.    The challenged provisions do not provide the same benefits to citizens and nationals of the United States who are not residents of Minnesota.....................................................................................27

D. Minnesota's constitutional and constitutional avoidance arguments lack merit. ..............................................................31

    1. Section 1623(a) does not violate the Constitution.....................31

    2. Constitutional avoidance principles provide no basis for affirming the district court's judgment ....................................36

CONCLUSION............................................................................................. 37

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Abramski v. United States*,
573 U.S. 169 (2014) ................................................................ 25

*Anderson v. Crouch*,
169 F.4th 474 (4th Cir. 2026) ................................................ 22

*Bryan v. Government of Virgin Is.*,
916 F.3d 242 (3d Cir. 2019) .................................................. 22

*Cheeks v. Belmar*,
162 F.4th 899 (8th Cir. 2025) ............................................... 13

*Clark v. Martinez*,
543 U.S. 371 (2005) ............................................................... 36

*Exxon Mobil Corp. v. Corporación Cimex, S. A. (Cuba)*,
609 U.S. ----, 2026 WL 1791259 (U.S. June 23, 2026) ............... 4, 24

*Hodel v. Virginia Surface Mining & Reclamation Ass'n*,
452 U.S. 264 (1981) ............................................................... 34

*Murphy v. National Collegiate Athletic Ass'n*,
584 U.S. 453 (2018) ............................................. 4, 13, 32, 35

*National Fed'n of Indep. Bus. v. Sebelius*,
567 U.S. 519 (2012) ........................................................ 34, 35

*Pacific Shores Props., LLC v. City of Newport Beach*,
730 F.3d 1142 (9th Cir. 2013) ............................................... 22

*Personnel Adm'r of Mass. v. Feeney*,
442 U.S. 256 (1979) ............................................................... 23

*Plyler v. Doe*,
457 U.S. 202 (1982) ............................................................... 31

*Printz v. United States*,
521 U.S. 898 (1997) ............................................................... 13

*Quarles v. United States*,
587 U.S. 645 (2019) ............................................................... 24

*Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*,
　600 U.S. 181 (2023) ................................................................. 23

*United States v. Blewett*,
　746 F.3d 647 (6th Cir. 2013), *superseded by statute on other grounds
　as stated in United States v. Richardson*, 960 F.3d 761 (6th Cir. 2020) ........... 37

*United States v. Texas*,
　No. 25-10898 (5th Cir. July 9, 2026) ..................................... 1, 4, 14, 22, 24, 30

*Young Conservatives of Tex. Found. v. Smatresk*,
　73 F.4th 304 (5th Cir. 2023) ................................................... 4, 5

**U.S. Constitution:**

U.S. Const. art. VI, cl. 2 ........................................................ 4

**Statutes:**

Illegal Immigration Reform and Immigrant Responsibility
　Act of 1996 (IIRIRA), Pub. L. No. 104-208, div. C, tit. III,
　110 Stat. 3009–546 ............................................................4

8 U.S.C. § 1101(a)(15) ........................................................ 6

8 U.S.C. § 1101(a)(33) ................................................. 8, 23, 24

8 U.S.C. § 1601(2)(B) ........................................................ 32

8 U.S.C. § 1601(5)-(6) ........................................................ 32

8 U.S.C. §§ 1611-1612 ........................................................ 24

8 U.S.C. § 1621 .............................................................. 24

8 U.S.C. § 1623 .............................................................. 4

8 U.S.C. § 1623(a) ....................................................... *passim*

8 U.S.C. § 1641(a) ........................................................... 24

28 U.S.C. § 1291 ............................................................. 3

28 U.S.C. § 1331 ..................................................................................... 3

28 U.S.C. § 1345 ..................................................................................... 3

28 U.S.C. § 3702 ................................................................................... 32

Minn. Stat. § 120A.20 ............................................................................ 7

Minn. Stat. § 120A.22 ............................................................................ 7

Minn. Stat. § 124D.04 .......................................................................... 21

Minn. Stat. § 124D.041 ........................................................................ 21

Minn. Stat. § 135A.011 ......................................................................... 19

Minn. Stat. § 135A.043 ......................................................................... 16

Minn. Stat. § 135A.043(a) ...................................................................... 6

Minn. Stat. § 135A.043(a)(1)-(2) .................................................. 17, 25

Minn. Stat. § 135A.043(a)(3) ............................................................... 17

Minn. Stat. § 135A.0431(a) .................................................................. 28

Minn. Stat. § 136A.101 subdiv. 8 ....................................................... 16

Minn. Stat. § 136A.101 subdiv. 8(1) ................................................... 18

Minn. Stat. § 136A.101 subdiv. 8(1)-(8) ............................................. 5

Minn. Stat. § 136A.101 subdiv. 8(3) ................................................... 25

Minn. Stat. § 136A.101 subdiv. 8(9) ............................................. 6, 20

Minn. Stat. § 136A.1465 ........................................................ 3, 4, 5, 15

**Rule:**

Fed. R. App. P. 4(a)(1)(B) ...................................................................... 3

**Legislative Materials:**

H.R. Rep. No. 104-828 (1996) (Conf. Rep.) .......................................................15

Act of May 24, 2013, ch. 99, art. 4,
2013 Minn. Laws 752 ................................................................................6

**Other Authorities:**

*Benefit*:
Black's Law Dictionary (12th ed. 2024)............................................................15

Merriam-Webster Dictionary Online, https://www.merriam-
webster.com/dictionary/benefit (last visited July 10, 2026) ...........................15

Merriam-Webster's Collegiate Dictionary 106 (10th ed. 1997)...........................15

Alex Friedrich, *Minnesota Senate Passes Dream Act Legislation*,
MPRnews (May 1, 2013, at 12:26 CT),
https://www.mprnews.org/story/2013/05/01/minnesota-
senate-passes-dream-act-legislation ............................................... 6, 19

Minn. Off. of Higher Educ., *Minnesota Alternative State Financial
Aid Application*, https://perma.cc/4QES-EDMN ................................................19

Univ. of Minn., *Cost of Attendance,* https://perma.cc/M8L3-PCGN ................. 5, 16

**INTRODUCTION**

Federal law provides that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). Minnesota nonetheless provides that the "resident tuition rate" for postsecondary education is available to "a student without lawful immigration status" if that student graduated from a Minnesota high school and attended high school in Minnesota for at least three years in addition to meeting several other basic requirements. Because federal law expressly preempts this provision of in-state tuition to unlawfully present aliens, the United States brought suit against Minnesota and other state defendants. And the Fifth Circuit recently held that § 1623(a) preempts a similar set of Texas statutes. *See United States v. Texas*, No. 25-10898 (5th Cir. July 9, 2026).

The district court dismissed the United States' complaint. According to the court, providing the "resident tuition rate" to those who attend and graduate from high school in Minnesota does not amount to providing a benefit "on the basis of residence" within Minnesota. That is wrong. Minnesota's choice to define residence in terms of graduation from a Minnesota high school does not somehow nullify the federal preemption of state laws providing in-state tuition to unlawfully present

aliens. The plain meaning of the federal statute is simply that, when a state establishes a scheme under which state residents are charged one price and nonresidents a higher price, aliens who are not lawfully present in the United States are not eligible for the lower rate.

That conclusion is all the more clear because Minnesota eliminated a more conventional—though essentially equivalent—residence requirement precisely in an attempt to sidestep § 1623. Defining residence in terms of the high school of graduation rather than in terms of domicile makes virtually no practical difference and does not entitle Minnesota to evade a federal law that expressly preempts the policy choice that Minnesota is attempting to make.

The district court alternatively reasoned that unlawful aliens are eligible for postsecondary education benefits as a class on the basis of residence if *any* citizen or national is eligible regardless of residence. The court reasoned that some number of citizens who are not Minnesota residents qualify for resident tuition and that the existence of this group—no matter how statistically tiny—means that *all* unlawful aliens remain eligible for the same benefits on the basis of residence. That is not what the statute says or means. Rather, "an" unlawful alien is eligible for a benefit on the basis of residence within a state only insofar as "a" citizen or national who is identically situated is eligible for the same benefit without regard to his or her

2

resident status. That is not only the sole plausible reading of the text but also the only way the federal statute makes any practical sense.

The district court's decision is contrary to the plain text of § 1623(a) and would deprive the statute of essentially, and perhaps literally, all effect. This Court should reverse.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, because this action arises under federal law and was commenced by the United States.[1] The district court entered final judgment on March 30, 2026. App. 26, R. Doc. 43, Add. 26. The United States filed a timely notice of appeal on May 1, 2026. App. 28, R. Doc. 45; *see* Fed. R. App. P. 4(a)(1)(B) (60-day time limit). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the challenged Minnesota provisions—Minn. Stat. § 135A.043 and Minn. Stat. § 136A.1465—are preempted by 8 U.S.C. § 1623(a) insofar as they grant

---

[1] The district court held that the United States lacked standing to sue Minnesota Governor Tim Walz and Minnesota Attorney General Keith Ellison because the district court believed that neither official had authority under Minnesota law to enforce the challenged provisions. Defendants do not appeal this ruling, since there is no dispute that the case can proceed—and the United States can obtain full relief—against the Minnesota Office of Higher Education, and the State of Minnesota, the other two defendants in this case.

postsecondary education benefits to aliens who are not lawfully present in the United States.

*Authorities*: *United States v. Texas*, No. 25-10898 (5th Cir. July 9, 2026); *Young Conservatives of Texas Foundation v. Smatresk*, 73 F.4th 304 (5th Cir. 2023); *Exxon Mobil Corp. v. Corporación Cimex, S. A. (Cuba)*, 609 U.S. ----, 2026 WL 1791259 (U.S. June 23, 2026); *Murphy v. National Collegiate Athletic Ass'n*, 584 U.S. 453 (2018); U.S. Const. art. VI, cl. 2; 8 U.S.C. § 1623(a); Minn. Stat. §§ 135A.043, 136A.1465.

## STATEMENT OF THE CASE

### A. Statutory Background

**1.** In 1996, Congress passed, and President Clinton signed, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). *See* IIRIRA, Pub. L. No. 104-208, div. C, tit. III, subtitle A, §§ 306, 308, 110 Stat. 3009–546, 3009–607-12, 3009–614-25. As relevant here, IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." 8 U.S.C. § 1623. Section 1623(a) provides as follows:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

*Id.* § 1623(a); *see also Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 312 (5th Cir. 2023) (observing that statute imposes a "condition precedent" for unlawful aliens' eligibility for residence-based benefits (quotation marks omitted)).

**2.** Like many states, Minnesota provides a highly preferential tuition rate at its public postsecondary educational institutions for Minnesota residents. *See* Univ. of Minn., *Cost of Attendance*[2] (estimating $19,174 in tuition for residents and $43,332 for non-residents). Although tuition rates are set by each institution, the legislature has set rules for which students are eligible for resident tuition. Until 2013, that definition included eight categories of students: students who had "resided in Minnesota for purposes other than postsecondary education for at least 12 months without being enrolled at a postsecondary educational institution for more than five credits in any term," dependent students whose parents or guardians lived in Minnesota, students who graduated from Minnesota high schools or obtained high school equivalency while living in Minnesota, certain veterans or members of the military and their families, and persons who relocated to Minnesota in various circumstances. *See* Minn. Stat. § 136A.101 subdiv. 8(1)-(8). Resident students who satisfy certain other criteria are also eligible for certain state scholarships and other forms of financial aid. *See* Minn. Stat. § 136A.1465.

---

[2] https://perma.cc/M8L3-PCGN.

In 2013, the Minnesota Legislature passed and Governor Dayton signed the Prosperity Act, popularly known as the Minnesota Dream Act. That enactment created a new freestanding section of the Minnesota code, entitled "resident tuition," providing that students would "qualify for a resident tuition rate or its equivalent at state universities and colleges" if they attended high school within the state for three or more years, graduated from a state high school or obtained within the state the equivalent of high school graduation and, "in the case of a student without lawful immigration status," complied with selective-service-registration requirements and followed any available process for applying for lawful immigration status.[3] Act of May 24, 2013, ch. 99, art. 4, § 1(a)(1)-(3), 2013 Minn. Laws 752, 785-86; *see also* Minn. Stat. § 135A.043(a). The statute also added a ninth category to the preexisting list of students eligible for resident tuition: "a student eligible for resident tuition under [newly enacted] section 135A.043." Act of May 24, 2013, ch. 99, art. 4, § 2, 2013 Minn. Laws at 786; Minn. Stat. § 136A.101 subdiv. 8(9).

As the bill's chief author explained, the purpose of this enactment was to make unlawfully present aliens eligible for resident tuition. *See* Alex Friedrich, *Minnesota Senate Passes Dream Act Legislation*, MPRnews (May 1, 2013, at 12:26 CT)[4]

---

[3] The statute excludes "nonimmigrant aliens," a term under federal law that includes tourists, foreign diplomats, and other specialized categories of visitors. *See* 8 U.S.C. § 1101(a)(15). That exclusion is not relevant to this case.

[4] https://www.mprnews.org/story/2013/05/01/minnesota-senate-passes-dream-act-legislation.

(quoting state Senator's statement that "we should treat [unlawfully present students] the same as we treat anyone else growing up in Minnesota and goes to a Minnesota high school"). And consistent with the intent of the statutory change, a standard based on high school attendance and graduation within Minnesota does not materially differ as a practical matter from a domicile-based standard. Like most (if not virtually all) states, Minnesota requires a student to be a resident in the school district of attendance in order to attend a public secondary education institution for free. *See* Minn. Stat. § 120A.20 ("Admission to a public school is free to any person who … resides within the district that operates the school."); *id.* § 120A.22 ("If a district reasonably believes that a student does not meet the residency requirements of the school district in which the student is attending school, the student may be removed [.]").

B.      **Factual Background**

The United States filed this suit against Minnesota Governor Tim Walz, Minnesota Attorney General Keith Ellison, the Minnesota Office of Higher Education, and the State of Minnesota, contending that both statutes are expressly preempted by § 1623(a). App. 29. The district court ruled that the United States lacked standing to sue Minnesota's Governor and Attorney General because, in the district court's view, under Minnesota law, neither possesses authority to enforce the challenged provisions. App. 12-13, R. Doc. 42, at 12-13, Add. 12-13. The United

7

States does not appeal this aspect of the court's ruling, as there is no dispute that the United States could obtain relief based on its claims against the other defendants.

On the merits, the district court concluded that § 1623(a) does not preempt Minnesota's scheme, on two grounds. First, the court concluded that a benefit is provided to an individual "on the basis of residence" for purposes of the federal statute only if it was provided "because their principal, actual dwelling place is within the State." App. 18, R. Doc. 42, at 18, Add. 18. The court claimed support for this conclusion by looking to the definition of "residence" in the Immigration and Nationality Act (INA), which IIRIRA incorporates into the chapter that contains § 1623(a). *See* 8 U.S.C. § 1101(a)(33). That standard was not met, according to the court, because it is theoretically possible to attend for three years and graduate from a Minnesota high school without living in Minnesota. The court deemed this conclusion required by the "plain text of § 1623." App. 21, R. Doc. 42, at 21, Add. 21. And the court felt that this reading was so unambiguously compelled by the plain text of the federal and state statutes that it deemed irrelevant (as to the federal statute) directly on point legislative history and (as to the state statutes) Minnesota's own description of its scheme as providing "Resident tuition." App. 15, 18-19, R. Doc. 42, at 15, 18-19, Add. 15, 18-19.

Second, the district court read § 1623(a)'s exception for circumstances in which "a citizen or national of the United States" is eligible for the benefit to mean

that unlawfully present aliens are eligible for postsecondary education benefits on the basis of residence if any citizen or national is eligible regardless of residence. App. 22-24, R. Doc. 42, at 22-24, Add. 22-24. The court's statutory analysis on this point focused entirely on the statute's reference to "a" citizen or national (while ignoring that the statute also refers to "an" alien). App. 22-24, R. Doc. 42, at 22-24, Add. 22-24. The court held that its requirement that a single citizen or national qualify for in-state tuition was met as to the Minnesota scheme—which allows, for example, honorably discharged veterans to obtain in-state tuition—thus making all unlawful aliens eligible for the relevant benefits. App. 24, R. Doc. 42, at 24, Add. 24.

## SUMMARY OF ARGUMENT

The district court incorrectly dismissed the United States' complaint because the challenged Minnesota provisions are preempted as a matter of law. Congress enacted legislation that preempts state laws providing in-state tuition to unlawfully present aliens. There is no dispute here that Minnesota's enactments have the purpose and effect of doing exactly that. The court was mistaken to allow Minnesota to evade on-point federal law by using a direct proxy for in-state residence.

A. The federal statute provides that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit" for which nonresident U.S. citizens or

9

nationals are ineligible. 8 U.S.C. § 1623(a). It is clear on the face of this statute that when states charge one tuition rate to nonresidents and a lower rate to nonresidents, Congress intended to preempt state laws insofar as they offer the in-state tuition rate to unlawfully present aliens. Minnesota appears to understand that; it properly has not disputed that in-state tuition is a postsecondary education benefit within the meaning of the statute, and the perceived need to enact the legislation at issue here makes clear that the prior statutes, which afforded in-state tuition to residents of the State, did not apply to unlawfully present aliens.

B. Minnesota cannot evade federal preemption by altering its definition of residence, let alone through the trivial expedient it has employed here. There are any number of ways that a state could determine that an individual has a sufficient connections to the state to be considered a resident for purposes of eligibility for in-state tuition, and Congress's reference to an alien who is "eligible on the basis of residence within a State" does not suggest that Congress intended for its enactment to hinge on those policy judgments. In any event, the definition of residence here— attendance at and graduation from a Minnesota high school—as a practical matter almost perfectly coincides with domicile, which the district court and Minnesota appear to concede would constitute a determination based on residence. Congress did not allow its express preemption provision to be evaded so easily.

The district court's contrary reasoning—and its apparent belief that a state law is only preempted if it uses a definition of residence that mirrors a federal definition intended for different purposes—would lead to nonsensical results. It would deprive the federal statute of essentially all effect. Indeed, it would deprive the statute of literally all effect in jurisdictions like Minnesota that disagree with the federal statute, and are thus willing to engage in the trivial and non-substantive statutory amendments of the sort the court held were sufficient to take its scheme outside § 1623(a)'s scope. And it would mean that Minnesota's decision to *expand* its definition of residence in 2013 (by requiring high school graduation and attendance only rather than explicitly referring to where a student lives) is precisely what causes the state statute to fall wholly outside § 1623(a)'s scope. All of these results, in addition to being contrary to § 1623(a)'s plain text, would make total nonsense of the scheme Congress enacted.

C. Minnesota does not provide the same benefit to citizens and nationals of the United States who are not residents of Minnesota—even though under federal law an unlawfully present alien may be eligible only insofar as "a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." The district court fixated entirely on § 1623(a)'s reference to "a citizen or national of the United States." But § 1623(a) says that "*an* alien who is not lawfully present in the United State shall not be eligible

11

on the basis of residence within a State" for a postsecondary education benefit unless "*a* citizen or national of the United States is eligible for *such* a benefit (*in no less an amount, duration, and scope*) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphases added). The meaning of that parallel structure is straightforward. An alien is eligible for a benefit on the basis of residence within a state only insofar as and to the same extent that an identically situated citizen or national is eligible for the same benefit without regard to his or her resident status. That means that the categorical eligibility for in-state tuition at issue here can stand only if the same benefit were made available to all U.S. citizens irrespective of residence. The court's contrary conclusion—that the mere existence of one U.S. citizen or national anywhere in the country who is not a state resident but nonetheless eligible for the same benefit means that § 1623(a) has no application—has no textual basis and is nonsensical. And since virtually every state allows at least some nonresidents to qualify for postsecondary education benefits otherwise reserved for state residents, that reading would again make § 1623(a) entirely ineffectual.

D. Contrary to Minnesota's contentions in district court, § 1623(a), properly construed, does not violate the Tenth Amendment. Pursuant to its broad powers over immigration and foreign affairs, Congress may direct that aliens who are not lawfully present in the United States are ineligible for benefits based on their (unlawful) residence within a State. And § 1623(a) does not have any other

constitutionally problematic features. It does not commandeer state functions, *see Printz v. United States*, 521 U.S. 898 (1997), and does not issue any commands to state legislatures or any other organ of state government, *see Murphy v. National Collegiate Athletic Ass'n*, 584 U.S. 453 (2018). It just preempts conflicting state law. Nor can constitutional-avoidance principles justify adopting Minnesota's implausible reading of the federal statute based on insubstantial constitutional arguments.

## STANDARD OF REVIEW

This Court reviews de novo the district court's dismissal of the complaint. *Cheeks v. Belmar*, 162 F.4th 899, 904 (8th Cir. 2025).

## ARGUMENT

### SECTION 1623(A) EXPRESSLY PREEMPTS THE CHALLENGED MINNESOTA PROVISIONS

Section 1623(a) provides that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). Section 1623(a) preempts the challenged provisions. As discussed below, (A) Minnesota purports to provide postsecondary education benefits to unlawful aliens on the basis of residence, exactly what the federal statute preempts; (B) Minnesota's tweak to the

13

definition of residence does not change that fundamental fact; (C) in-state tuition is not, of course, provided to non-resident United States citizens and nationals; and (D) properly construed, § 1623(a) does not run afoul of the Tenth Amendment or otherwise exceed Congress's constitutional authority. This Court should reverse.

A.     **Section 1623(a) preempts Minnesota's effort to provide in-state tuition to unlawfully present aliens.**

The federal statute at issue here provides that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit" for which nonresident U.S. citizens or nationals are ineligible. 8 U.S.C. § 1623(a). There appears to be no dispute that this provision precludes states from allowing unlawfully present aliens who are residents of the state to pay only in-state tuition, to the extent that the state provides different tuition rates for residents and nonresidents who are U.S. citizens or nationals.

That is self-evidently what the statute is about based on its text alone. Any ordinary reader with even a baseline understanding of college education in the United States (in 1996 or 2026) would instantly understand the relevant language— "eligible on the basis of residence within a State . . . for any postsecondary education benefit"—to encompass, and indeed likely be meant specifically to refer to, in-state tuition. The Fifth Circuit has recently so held. *United States v. Texas* (*Texas Decision*), No. 25-10898, at 12-13 (5th Cir. July 9, 2026). Minnesota accordingly

14

did not dispute in district court that in-state tuition was a postsecondary education benefit for purposes of this statute, and it was correct to concede the point—as dictionaries from the period when the statute was enacted (as well as current dictionaries) underscore. *See, e.g.*, *Benefit*, Black's Law Dictionary (12th ed. 2024) ("advantage or privilege something gives"); *Benefit*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/benefit (last visited July 10, 2026) ("something that produces good or helpful results or effects or that promotes well-being"); *Benefit*, Merriam-Webster's Collegiate Dictionary 106 (10th ed. 1997) ("ADVANTAGE" and "useful aid"). And the sorts of scholarships for which aliens are made eligible under the North Star Promise statute, *see* Minn. Stat. § 136A.1465, are also self-evidently postsecondary education benefits.

To the extent legislative history is relevant, that history could not be clearer that legislators understood § 1623 to encompass in-state tuition rates. Indeed, the principal purpose of the provision was to preempt precisely the scheme embodied in Minnesota law. A House conference committee report, commenting on the language that was ultimately enacted as § 1623, states that "[t]his section provides that illegal aliens are not eligible for in-state tuition rates at public institutions of higher education." H.R. Rep. No. 104-828, at 240 (1996) (Conf. Rep.).

**B. The challenged provisions provide benefits "on the basis of residence" within Minnesota.**

**a.** Minnesota also provides in-state tuition and the additional benefits in the North Star promise statute on the basis of residence. That, too, could not be more straightforward. Minnesota, like many states, has elected to provide postsecondary education at its state institutions at markedly reduced rates for Minnesotans, as opposed to out-of-state students. *See* Univ. of Minn., *Cost of Attendance*, *supra* (estimating $19,174 in tuition for residents and $43,332 for non-residents). It has defined the term "resident student" in terms of the student's connection to Minnesota, including individuals who have lived in the State for a year for purposes other than public education, dependents of Minnesota residents, and others with connections to Minnesota deemed sufficient to qualify the individual as a "resident." *See* Minn. Stat. § 136A.101 subdiv. 8.

The statute at issue here was apparently enacted based on the recognition that, by virtue of 8 U.S.C. § 1623(a), these provisions (which make no mention of immigration status) would not confer in-state tuition on Minnesota residents who are unlawfully present aliens. In an express effort to address that issue, in a statute titled "resident tuition," Minn. Stat. § 135A.043, Minnesota provides that a student "shall qualify for a resident tuition rate or its equivalent at state universities and colleges if" the student attends high school within Minnesota for at least three years and graduates "from a state high school" or attains "within the state" the equivalent of a

16

high school diploma, *id.* § 135A.043(a)(1)-(2), as well as satisfying other conditions applicable only to "a student without lawful immigration status," *id.* § 135A.043(a)(3).

Attendance at and graduation from a Minnesota high school is thus how the State defines residence for purposes of in-state tuition. A state might define residence for purpose of in-state tuition in any number of ways: filing of an income tax return in the state, holding a state driver's license, being registered to vote in the state, some combination of these ties to the state, or other factors. Or a state could use Minnesota's old definition, which involved a combination of the student's own residence at various times, the residence of the student's parent or guardian, and other factors. Section 1623(a) is entirely agnostic on how the state determines who gets to pay resident tuition. Its plain meaning is simply that, when a state establishes a scheme under which state residents who are U.S. citizens are charged one price and those who live elsewhere are charged more, aliens who are not lawfully present in the United States are not eligible for the lower rate.

Minnesota's choice to provide in-state tuition based on high school attendance and graduation within the State, moreover, reflects a commonsense understanding of residence. Individuals who seek to enroll in Minnesota colleges will have graduated from high school or attained the equivalent of a high school diploma, and Minnesota could reasonably conclude that those who graduated from Minnesota

17

high schools should be treated as Minnesotans for purposes of resident tuition. A state could make other choices, such as evaluating residence at the time of the application (as Minnesota also does in certain circumstances, *see* Minn. Stat. § 136A.101 subdiv. 8(1)), which provides a benefit to those who move to Minnesota as an adult. Or a state could measure domicile at the time of high-school graduation, which is likely in virtually all cases to yield identical results to checking the location of the high school but would be more difficult to administer. There is no indication that Congress intended to limit the reach of the federal statute based on which of these policy choices a state makes.

The district court's contrary suggestion, in addition to having no basis in the federal statute's text, provides a recipe for evasion—a recipe so straightforward and easy that the federal statute would simply cease to apply in states that disagree with it, defeating the entire point of a preemption provision. Minnesota does not dispute that virtually every student who attends high school in Minnesota for three years and graduates from a Minnesota high school in fact had a domicile within Minnesota. There is also no dispute that Minnesota intended in passing the Dream Act to provide in-state tuition to unlawful aliens based on their connection to the state—and structured the Act to require only in-state high school attendance in an attempt to avoid § 1623(a). As the Minnesota Office of Higher Education boasts to this day, "[u]nder the Minnesota Dream Act, undocumented students may be eligible for in-

state tuition rates." Minn. Off. of Higher Educ., *Minnesota Alternative State Financial Aid Application*, https://perma.cc/4QES-EDMN. Justifying the law, the bill's chief author explained that "[t]hese are Minnesota students, too," "[t]hey've grown up in Minnesota . . . [a]nd we should treat them the same as we treat anyone else growing up in Minnesota and goes to a Minnesota high school." Friedrich, *supra* (quotation marks omitted); *see also id.* (noting that the "bill would give [unlawful aliens] access to resident tuition and state financial aid by essentially changing the legal definition of a resident student for purposes of tuition and financial aid"); Minn. Stat. § 135A.011 (describing State's objective to provide "an opportunity for all Minnesotans, regardless of personal circumstances, to participate in higher education"). Indeed, in the district court, the State described its law as "mak[ing] higher education possible for more Minnesota students and families, including by offering in-state tuition and financial aid to eligible students regardless of their immigration status." R. Doc. 11, at 4.

**b.** The district court's contrary analysis does not withstand scrutiny.

**i.** According to the district court, "nonresidents can—and do—qualify for resident tuition: by living in a neighboring state and attending Minnesota high schools, attending a Minnesota boarding school, or attending and graduating from a Minnesota high school before moving out of state." App. 24, R. Doc. 42, at 24, Add. 24. There are a number of problems with this analysis. First of all, the question in

the federal statute is whether an alien is provided a benefit by the state "on the basis of residence." So the relevant question is whether a given alien is considered to be a resident by the state and provided a benefit on that basis. Minnesota has made quite clear that it treats aliens who graduated from high school in the State as residents—it defined them, after all, as "[r]esident student[s]," Minn. Stat. § 136A.101 subdiv. 8(9)—and provides them with a postsecondary education benefit on that basis. That should be the end of the analysis.

Second, this supposed group of "nonresidents"—really, nondomiciliaries—who qualify for "resident tuition" is almost entirely a null set. Two of the district court's three categories by definition involve domiciliaries. A student attending a Minnesota boarding school would have resided at the Minnesota boarding school while in attendance there; that is of course what distinguishes boarding schools from other secondary institutions. As for the district court's hypothetical involving someone who previously lived in Minnesota while attending for three years and graduating from a Minnesota high school, subsequently moved out of state, and then applied to college—obviously a very unusual scenario—that hypothetical individual is still being permitted to pay lower in-state tuition based on his/her prior lengthy residence in the state. Nothing in § 1623(a)—"on the basis of residence"—requires in-state tuition to be provided based on an alien's *current* residence (or residence at any particular point in time). As discussed above, a state may wish to make a choice

20

about the timing of any residency requirement for in-state tuition, and there is no evidence that Congress intended to draw distinctions in federal law based on that policy choice.

So that leaves just students from neighboring states (and Canada) who attend a Minnesota high school for at least three years, graduate from that high school, but never live in Minnesota. That is almost certainly an infinitesimally small percentage of Minnesota high school graduates; indeed, although students from adjoining states and Canada may attend public high school in Minnesota, they may do so only if the student's jurisdiction pays the costs of the student's tuition or pursuant to an agreement with Minnesota. Minn. Stat. §§ 124D.04, 124D.041. And as noted above, Minnesota requires a student to be live in the school district of attendance in order to attend a public secondary education institution for free. *See supra* p. 7.

In any event, as discussed above, that Minnesota employs a definition of "resident tuition" that sweeps in some individuals who the district court might consider to be nonresidents—whether that number is small or large—is irrelevant. The relevant point is that state is providing the benefit on the basis of residence—that is what *in-state tuition is*. The district court's reliance on but-for causation principles only underscores the point. There is no dispute here that Minnesota seeks to provide in-state tuition benefits to unlawfully present aliens because it classifies them as resident students, and not for any other reason.

21

And even if Minnesota had not framed its scheme expressly as allowing a "resident student" to pay "resident tuition," it is undisputed that Minnesota was attempting to distinguish Minnesotans from people from other states in order to extend in-state tuition to those unlawful aliens it considers at home in Minnesota. Minnesota openly boasts about this, both today and at the time the Dream Act was enacted. *See supra* pp. 6-7, 18-19. If nothing else, a state's express effort to distinguish between residents and non-residents must qualify as a distinction "on the basis of residence." And although the Fifth Circuit in *Texas* did not decide the issue (since the statute in that case included an additional, express requirement that the student have lived in the state), it correctly noted that "graduating from a high school in Texas" "is a proxy for residence." *Texas* Decision, at 18. In this respect, the analysis under § 1623(a) would mirror the analysis in a wide variety of other contexts involving statutory and constitutional discrimination claims, where courts routinely conclude that use of a proxy constitutes making a determination based on the relevant trait itself. *See, e.g.*, *Anderson v. Crouch*, 169 F.4th 474, 484 (4th Cir. 2026) (noting that "even a facially neutral classification may warrant heightened scrutiny if it uses a proxy to camouflage intentional discrimination based on a protected trait"); *Bryan v. Government of Virgin Is.*, 916 F.3d 242, 246 (3d Cir. 2019) (explaining that the "employer may not use a direct proxy for age to discriminate surreptitiously against older workers"); *Pacific Shores Props., LLC v. City of*

22

*Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013) (similar). "The dispositive question" in such cases is whether the "discriminatory purpose has, at least in some measure, shaped the [challenged] legislation." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 276 (1979); *cf. Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181, 230 (2023) ("[W]hat cannot be done directly cannot be done indirectly. The Constitution deals with substance, not shadows, and the prohibition against racial discrimination is levelled at the thing, not the name." (alteration in original) (quotation marks omitted)). The question is again not necessary to address here because Minnesota itself *frames* its law as providing "resident" tuition. But even if it had not, Minnesota cannot work around the Supremacy Clause through creative wordsmithing.

**ii.** The district court's reliance on the INA's definition of "residence," *see* 8 U.S.C. § 1101(a)(33), is similarly flawed. The district court reasoned that because the INA defines residence as "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent," *id.*, the federal statute preempts state law only where the state statute "provides postsecondary education benefits to unlawful noncitizens because their principal, actual dwelling place is within the State," App. 18, R. Doc. 42, at 18, Add. 18. But § 1623(a) refers to a state's determination of "residence within a state," not to "residence" in the abstract. It is hard to imagine a circumstance where a state

23

would determine whether an individual is entitled to in-state tuition by applying the INA's definition of residence, and there is no reason to believe that Congress would have presumed otherwise. Although IIRIRA incorporates the INA's definition in the chapter that contains § 1623, *see* 8 U.S.C. § 1641(a), that definition (and IIRIRA's incorporation of it) serves a very different purpose—defining who qualifies as a permanent resident and is otherwise qualified for *federal* programs and benefits. *See, e.g., id.* §§ 1611-1612, 1621.

Section 1623(a) does not depend on who is a resident under federal law, but rather on who receives a state benefit "on the basis of residence." And that depends on the state's definition, not the federal one. A contrary conclusion would lead to absurd results. If a state, for example, defined residence in terms of a dwelling place, but not a "principal" dwelling place as the federal definition does, 8 U.S.C. § 1101(a)(33), thus sweeping in slightly more unlawfully present aliens, there is no basis to presume that the entire federal scheme would be nullified. *See Texas Decision* at 10-11 n.14 (rejecting a version of this argument). Yet that is precisely what the district court suggested. App. 18, R. Doc. 42, at 18, Add. 18.

**c.** Even if the district court's interpretation was one *possible* reading of the statutory text, "Congress does not ordinarily enact self-defeating statutes." *Exxon Mobil Corp. v. Corporación Cimex, S. A. (Cuba)*, 609 U.S. ----, 2026 WL 1791259, at *7 (U.S. June 23, 2026); *accord Quarles v. United States*, 587 U.S. 645, 654

(2019) ("We should not lightly conclude that Congress enacted a self-defeating statute."); *Abramski v. United States*, 573 U.S. 169, 181 (2014) (rejecting interpretation that would render statute "utterly ineffectual"). The court's reading would produce a number of nonsensical results that make no practical sense and that would almost completely neuter § 1623(a).

As discussed above, the district court's reading would allow § 1623(a) to be evaded by the adoption of a classification that is almost perfectly correlated with the federal definition of residence and is intended to serve the exact same purposes. There is no logical reason to read § 1623(a) that way.

Minnesota and the district court now make the anomalous suggestion that its new definition of residence, which refers only to the location of the high school and not explicitly to where the person lived, takes its scheme out of the purview of § 1623(a). *Compare* Minn. Stat. § 136A.101 subdiv. 8(3), *with id.* § 135A.043(a)(1)-(2). Where Minnesota previously required high school graduation but also imposed a separate express requirement based on where the student lived—redundant in virtually every case—it now bases entitlement to resident tuition on high school attendance and graduation within Minnesota alone. But to the extent that this change makes any difference at all, it sweeps in slightly more students (and slightly more unlawfully present aliens). So on the court's reading, the State's decision to *expand* its definition of residence—sweeping in *more* unlawfully present aliens—is

25

precisely what causes the state statute to fall wholly outside § 1623(a)'s scope, a wholly untenable reading of the statutory text.

Worse still, on the district court's reading, a state law would be preempted only if it happened to copy and paste § 1101(a)(33) directly into the state code—or at the very least, only if it defined the students eligible for in-state tuition using a definition of residence that is identical to § 1101(a)(33)'s definition in all material respects. There is no reason to expect a state to do that and, even if it did, that would make federal preemption turn entirely on immaterial and meaningless happenstance—a state's drafting choices in how it specifically determined residence. And a state whose statute was preempted could avoid preemption entirely by slightly tweaking the definition of residence, even if that change made no meaningful difference. And again, a state could specifically avoid preemption under § 1623 by employing a broader definition of residence that sweeps in *more* unlawful aliens. The court thought, for example, that a state statute would provide benefits on the basis of residence only if the state employed a definition limited to an individual's "principal, actual dwelling place…within the State." App. 18, R. Doc. 42, at 18, Add. 18. None of this makes any sense. Indeed, even Minnesota apparently did not believe that the federal definition of residence applied, as it understood new legislation to be required because its prior definition of residence, which included

26

various other features, would not provide in-state tuition to unlawfully present aliens in light of § 1623(a).

### C. The challenged provisions do not provide the same benefits to citizens and nationals of the United States who are not residents of Minnesota.

As noted, an unlawfully present alien is eligible for postsecondary education benefits on the basis of residence only insofar as "a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). There should be no room for serious dispute that in-state tuition is not a benefit that is available to out-of-state American citizens and nationals. That is inherent in a distinction between in-state and out-of-state tuition. Individuals who fall outside the definition of a resident student entitled to pay resident tuition under Minnesota Statutes §§ 135A.043 and 136A.101 are not eligible for in-state tuition and free and the other benefits provided under the North Star Promise statute. That differential treatment conflicts with § 1623(a).

In concluding otherwise, the district court appeared to simply rely on its previous conclusion regarding what "on the basis of residence" means: The court reasoned that both non-residents and residents qualify for tuition by attending and graduating from a Minnesota high school: "nonresidents can—and do—qualify for resident tuition: by living in a neighboring state and attending Minnesota high schools, attending a Minnesota boarding school, or attending and graduating from a

Minnesota high school before moving out of state." App. 24, R. Doc. 42, at 24, Add. 24. That analysis is incorrect for the reasons discussed above.

But more broadly, like many other states, Minnesota does allow certain people to pay in-state tuition who are not residents. For example, anyone "who is honorably discharged from the armed forces of the United States is entitled to the resident tuition rate at Minnesota public postsecondary institutions." Minn. Stat. § 135A.0431(a). Those individuals are not provided a benefit on the basis of residence at all, although they receive the same benefit as residents do. But their existence does not nullify the whole federal scheme. Rather, the clause limiting the federal statute's reach to circumstances in which "a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident," 8 U.S.C. § 1623(a), has the much more modest effect of confirming that the federal statute does not compel unlawfully present aliens to be treated worse than similarly situated nonresident U.S. citizens.

The district court's contrary conclusion was premised on the statute's reference to "a citizen or national," and in particular on the use of the word "a," which is "singular" and "means 'one' or 'any.'" App. 23, R. Doc. 42, at 23, Add. 23. But § 1623(a) also speaks of "an alien," which is no less singular. Specifically, the statute (paraphrased without changing its meaning) contains the following pieces: (i) "*an*" unlawfully present alien; (ii) is not eligible on the basis of state residence

"for any postsecondary education benefit" unless; (iii) "a" U.S. citizen or national is eligible; (iv) "for *such* a benefit"; (v) "in no less an amount, duration, and scope"; (vi) without regard to whether the citizen or national is such a resident. 8 U.S.C. § 1623(a) (emphases added)

The meaning of this parallel structure is straightforward. A particular unlawfully present alien is eligible for a particular benefit only to the same extent that an identically situated nonresident citizen or national is eligible for that benefit, and in no greater an amount, duration, and scope. So, to take the example above, because Minnesota provides in-state tuition to citizens and nationals who are honorably discharged from the United States military, aliens who are unlawfully present in the United States but who were honorably discharged from the United States military are similarly eligible under this state statute. Or to take a hypothetical example, if Minnesota—in an effort to attract top out-of-state students—made in-state tuition available to U.S. citizens and nationals with perfect SAT scores irrespective of residence, unlawful aliens residing in Minnesota *with perfect SAT scores* would remain eligible for in-state tuition under that hypothetical statute. Indeed, Minnesota could distinguish between aliens resident in Minnesota and aliens in other states with respect to this population—and thus provide unlawfully present aliens with a benefit on the basis of residence—so long as U.S. citizens and nationals remained eligible for the same benefit without regard to residence.

Applying that framework here is straightforward. The categorical eligibility for in-state tuition at issue here can stand only if the same benefit were made available to all U.S. citizens irrespective of residence—which it concededly does not. But the statute plainly does not mean that, if a state makes a single nonresident citizen or national eligible for in-state tuition, § 1623(a) no longer applies and unlawful aliens are categorically eligible. As the Fifth Circuit correctly noted, "[e]ligibility for one U.S. citizen or national in a discrete circumstance cannot unlock preferential in-state tuition for all illegal aliens when other citizens or nationals are excluded from consideration." *Texas* Decision, at 14.[5]

Again, that conclusion follows from § 1623(a)'s plain text but is also the only reading that makes any practical sense. There is no plausible theory under which Congress could have on the one hand wanted to make unlawful aliens ineligible for state postsecondary education benefits on the basis of state residence, but on the other hand wished to restore that eligibility if a single nonresident U.S. citizen or national were made eligible for that benefit. And as set forth above, virtually every state allows *some* citizens to qualify for in-state tuition regardless of residence, so

---

[5] Judge Ramirez dissented in *Texas*. But she did not appear to dispute that the challenged Texas provisions conflict with § 1623(a). Rather, she questioned whether the district court had jurisdiction over the United States' lawsuit against Texas because the parties agreed upon the proper outcome (a circumstance not presented here), and because she believed § 1623(a) is unconstitutional (which is incorrect for the reasons discussed below). *Texas* Decision, at 26-31, 35-41 (Ramirez, J., dissenting).

this reading would again result in a federal statute that would do nothing. This Court should reject the district court's reading, which is contrary to the statute's text and results in a nonsensical statute that is entirely self-defeating.

D. **Minnesota's constitutional and constitutional avoidance arguments lack merit.**

In district court, Minnesota also argued that its statute should be upheld to avoid constitutional concerns under the Tenth Amendment. But the federal statute is unambiguous and raises no constitutional concerns.

### 1. Section 1623(a) does not violate the Constitution.

**a.** The constitutional basis for § 1623(a) is straightforward. Congress plainly has authority to determine the circumstances in which aliens are entitled to benefits. There is nothing constitutionally suspect about Congress—pursuant to its broad powers over immigration and foreign affairs—directing that aliens who are not lawfully present in the United States are ineligible for benefits based on their (unlawful) residence within a State that are denied to United States citizens. *See Plyler v. Doe*, 457 U.S. 202, 225 (1982) ("Although it is a routine and normally legitimate part of the business of the Federal Government to classify on the basis of alien status, and to take into account the character of the relationship between the alien and this country, only rarely are such matters relevant to legislation by a State." (citations and quotation marks omitted)). As such, § 1623(a) is a legitimate exercise of Congress's undoubted authority to regulate immigration. As Congress explained

in IIRIRA, "the availability of public benefits [should] not constitute an incentive for immigration to the United States," 8 U.S.C. § 1601(2)(B), and, as a matter of public policy, there "is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits," *id.* § 1601(5)-(6).

**b.** Relying principally on *Murphy v. National Collegiate Athletic Ass'n*, 584 U.S. 453 (2018), Minnesota contended in district court that § 1623(a) unconstitutionally regulates the states rather than private actors, and that it unconstitutionally commandeers state functions. To the extent it is relevant, *Murphy* counsels in favor of the opposite conclusion. The point of *Murphy* was that Congress could not force a state *to legislate*. Specifically, by providing that a state could not "authorize by law or compact . . . a lottery, sweepstakes, or other betting, gambling, or wagering scheme based . . . on" competitive sporting events, 28 U.S.C. § 3702, Congress purported to require states to make certain conduct illegal under state law, *Murphy*, 584 U.S. at 474-75; *see also id.* at 475 (characterizing law as "command[ing] state legislatures to enact or refrain from enacting state law"). The Court made clear, however, that Congress could preempt state law by providing or eliminating a right or obligation held by private citizens that the state would

32

otherwise have afforded or withheld. Section 1623(a) is thus a textbook case of what the Supreme Court described as an ordinary, valid preemption law: "Congress enacts a law that imposes restrictions or confers rights on private actors" (here, restrictions on the receipt of certain benefits); "a state law confers rights or imposes restrictions that conflict with the federal law" (here, a right to in-state tuition); "and therefore the federal law takes precedence and the state law is preempted." *Id.* at 477.

And the more basic point is that § 1623(a) is *self-executing*. It makes unlawful aliens ineligible for benefits under the circumstances where it applies, and it preempts contrary state laws—*without requiring* any intervening steps by states or their legislatures. That does not amount to a command to legislate or refrain from legislating. And extending *Murphy* to this entirely ordinary preemption provision would have no logical limit, since the dynamic Minnesota describes—a federal statute sweeping aside contrary state law—is true of all preemption provisions.

**c.** Minnesota also framed its Tenth Amendment argument as a complaint that § 1623(a) forces it "to grant in-state tuition and state financial aid to all nonresident citizens . . . just because the state elected to make certain undocumented students eligible for such benefits." R. Doc. 11, at 22 (emphasis omitted). That assertion is puzzling, insofar as Minnesota does not purport to have done that or assert that it would do so if the United States prevailed in this litigation. Minnesota could, if it wished, entirely eliminate the distinction between in-state and out-of-state tuition,

and in so doing would be in full compliance with § 1623(a). But the State could also, as it did before 2013, maintain the distinction, and allow § 1623(a) to operate to preclude unlawfully present aliens from obtaining the benefits of in-state tuition. Section 1623(a) does not force the State into one choice or the other, although it seems highly implausible that Congress would have anticipated that any state would scrap in-state tuition on this basis.

In any event, it would have been within Congress's constitutional authority to simply make unlawful aliens categorically ineligible, for reasons discussed above. So obviously nothing in the Constitution precludes Congress from affording states *additional* policy flexibility in this way. *Cf. Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 290 (1981) (where "Congress could constitutionally have enacted a statute prohibiting any state regulation of surface coal mining," "[w]e fail to see why the Surface Mining Act should become constitutionally suspect simply because Congress chose to allow the States a regulatory role").

Because Congress was not coercing the states to take any action, cases like *National Federation of Independent Business v. Sebelius* (*NFIB*), 567 U.S. 519 (2012), are inapposite. In *NFIB*, the federal statute "dramatically increase[d] state obligations under Medicaid" even though "the Federal Government may not compel the States to enact or administer a federal regulatory program," *id.* at 575 (plurality

34

opinion) (quotation marks omitted), and it did so to "coerc[e] the States" into expanding Medicaid coverage by threatening to withhold federal money, *id.* And "[t]he threatened loss of over 10 percent of a State's overall budget" was "economic dragooning that leaves the States with no real option but to acquiesce in the Medicaid expansion." *Id.* at 582.

Nothing of the kind is happening here. It would strain credulity to suggest that Congress was attempting to bludgeon states into eliminating in-state tuition for U.S. citizens by preempting efforts to extend the same benefit to unlawfully present aliens. Congress instead was merely setting rules for unlawfully present aliens, which is within Congress's authority.

**d.** Minnesota also contended in district court that if § 1623(a) preempts its scheme then that undermines political accountability because voters will not "know whether 'to credit or blame' the federal government or the states for a particular action or regulation." R. Doc. 11, at 21 (quoting *Murphy*, 584 U.S. at 473). This contention is likewise without merit. Minnesota is free to attribute the absence of in-state tuition for unlawfully present aliens to the federal government—and when a federal court enjoins application of Minnesota's statutes to unlawfully present aliens based on federal law, there is no uncertainty about whose laws are causing that result. In the unlikely event that Minnesota elected to respond to § 1623(a) by eliminating any distinction between the tuition charged to in-state and out-of-state students who

are U.S. citizens or nationals, that choice cannot plausibly be attributed to the federal government.

### 2. Constitutional avoidance principles provide no basis for affirming the district court's judgment.

Because the statute is clear and because Minnesota's constitutional objections are insubstantial, the constitutional-avoidance doctrine is irrelevant here. And avoidance "is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts." *Clark v. Martinez*, 543 U.S. 371, 381 (2005). That doctrine is not applicable here because Minnesota does not propose an interpretation that cures the supposed constitutional problems it purports to identify; Minnesota's interpretation "avoids" the issue only by depriving the federal statute of all or virtually all effect.

In any event, in construing § 1623(a), this principle at most is a tool for choosing between competing plausible interpretations. For the reasons discussed above, Minnesota and the district court's understanding of § 1623(a), in addition to being flatly contrary to that statute's text, is decidedly not plausible. On that reading, the statute does not preempt state statutes treating as "resident students" entitled to "resident tuition" unlawfully present aliens who attended for three years and graduated from high school within the state (and thus presumably lived in the state at that time); allows states to avoid the statute by *expanding* the definition of

residence and the number of unlawful aliens eligible; ceases to apply entirely if the state's definition of residence does not precisely mirror the INA's definition; and likewise categorically ceases applying if a single non-resident citizen or national in the entire country is also eligible. That is not statutory interpretation; it is statutory nullification.

For the reasons discussed above, Minnesota's constitutional arguments are also insubstantial. And "a weak constitutional argument and a weak statutory argument do not add up to a strong constitutional avoidance argument." *United States v. Blewett*, 746 F.3d 647, 660 (6th Cir. 2013) (en banc), *superseded by statute on other grounds as stated in United States v. Richardson*, 960 F.3d 761, 763 (6th Cir. 2020) (per curiam). This Court should reverse.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. McARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY

/s/ Andrew M. Bernie
ANDREW M. BERNIE
*Attorneys, Appellate Staff*
*Civil Division, Room 7539*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3511*
andrew.bernie@usdoj.gov

July 2026

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,321 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Times New Roman 14-point font, a proportionally spaced typeface.

Pursuant to Circuit Rule 28A(h)(2), I further certify that the brief has been scanned for viruses, and the brief is virus free.

*s/ Andrew M. Bernie*
Andrew M. Bernie

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Andrew M. Bernie*
Andrew M. Bernie